UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMUEL G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  4:21 CV 1375 JMB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On May 15, 2020, Plaintiff Samuel G. filed an application for disability benefits, arguing that his disability began on May 15, 2020,[1] because of diabetes, neuropathy, depression disorder, arthritis, and painful hands (Tr. 179).  On June 23, 2020, Plaintiff's claims were denied upon initial consideration (Tr. 179-83).  Plaintiff then requested a hearing before an ALJ.  Plaintiff appeared at the hearing (with counsel) on March 4, 2021, and testified concerning the nature of his disability, his functional limitations, and his past work (Tr. 54-73).  The ALJ also heard testimony from James Israel, a vocational expert ("VE") (Tr. 73-80, 340).  After considering Plaintiff's testimony and the VE's testimony, and after reviewing the other relevant evidence of record, the ALJ issued a

---

[1] Plaintiff previously filed for disability benefits, alleging disability beginning on July 3, 2013.  An Administrative Law Judge ("ALJ") denied his application in a decision dated May 6, 2014.  (Tr. 81-96)

Page **1** of **16**

decision on March 29, 2021, finding that Plaintiff was not disabled, and therefore denying benefits (Tr. 28-38). Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration (Tr. 1-7). On September 22, 2021, the Appeals Council denied review of Plaintiff's claims, making the March 29, 2021, decision of the ALJ the final decision of the Commissioner. Plaintiff has therefore exhausted his administrative remedies, and his appeal is properly before this Court. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

The administrative record before this Court includes medical records concerning Plaintiff's health treatment from January 3, 2019, through January 23, 2021. Plaintiff focuses on his limitations in social functioning and the effect of his condition on his ability to maintain regular workplace attendance. As such, the Court will focus on these areas in discussing the medical record.

### A.     **Psychiatric Medical Care**

Between January 3, 2019, through December 10, 2020, Dr. Eric Wittrock, a number of Clinical Services Specialists ("CSS"), and various nurses treated Plaintiff's major depressive disorder and generalized anxiety disorder (Tr. 352-61, 847-906, 1032-1139, and 1233-1323). During this time period, Plaintiff resided in a group home and reported trouble with alcoholism and medication compliance (for diabetes), and struggling with depression and anxiety, among other things. However, he regularly and independently appeared for and received monthly vivitrol injections, used to treat opioid dependence. He reported spending time with a girlfriend and expressing a desire to be more social and active. By the middle of 2019, Dr. Wittrock found that Plaintiff appeared to be stable and continued his current medication regimen.

During this time-period, Plaintiff received assistance with shopping, budgeting, housing, and transportation.  He was able to cook a Thanksgiving meal, spend time with a neighbor, and reported that he was trying to keep up with his daily exercise.  In a January 20, 2020, Integrated Recovery Plan, Plaintiff explained in the Strengths Summary section that "[h]e like[s] people and [he tries] to help them feel comfortable with me so [he] can get to know them and gain a friend" (Tr. 356).  Plaintiff further indicated that he likes working alongside others, and he gets "things done though partnership with others."  While he did miss one or two monthly vivitrol injections and was off task in shopping (with side conversations with other customers and choosing items not on a shopping list), he continued to improve in medication compliance for diabetes, spent time assisting his mother with activities of daily living, and using public transportation to get to the appointment and return home.  By the last visits, while he continued having issues with diabetes, he was visiting his mother four times a week, continuing to visit commercial institutions with some assistance, and continuing to attend his medical appointments without assistance.

During this same time period, Plaintiff also received mental health treatment from Dr. Celina Rose Jacobi and Dr. Tingying Chi (Tr. 362-814, 976-997).  On January 25, 2019, Dr. Jacobi opined "[Plaintiff] has continued to have irritability and impulsivity [as an adult], failure to fulfill major role obligations and maintain employment, manipulativeness (including recent hospitalizations with c/f malingering), and lack of remorse" (Tr. at 813).  Plaintiff reported continued sleep walking, including tripping and knocking out his front teeth, but he had weeks at a time without taking his prescribed medication due to his failure to order a refill and running out of his medication early without explanation.

On March 7, 2019, Dr. Jacobi found Plaintiff's psychiatric symptoms remained stable with chronic dysphoria, mood lability, and irritability most likely due to his underlying personality

disorder rather than active major depressive episode. Plaintiff requested to resume attending therapy groups. On April 4, 2019, Dr. Jacobi treated Plaintiff for major depressive disorder, generalized anxiety disorder, and antisocial personality disorder. Plaintiff reported that his symptoms remained stable with no reoccurrence of persistent, prolonged low mood but ongoing mood lability and irritability; and his relationship with his girlfriend continued to be strong. Dr. Jacobi observed Plaintiff's gait and posture were normal. Dr. Jacobi found Plaintiff's depression remained in remission and continued his medication regimen. During follow-up treatment on May 17, 2019, Dr. Jacobi found Plaintiff's symptoms remained stable. Dr. Jacobi made a notation to the next provider indicating that "[t]he patient has remained stable over the course of the year with remission of his depressive symptoms but ongoing chronic dysphoria, mood lability, irritability, and intermittent thoughts of death consistent with his underlying antisocial personality disorder . . . patient struggled with taking medication as prescribed and compliance, in addition to struggling with compliance with insulin" (Tr. at 668).

On August 23, 2019, Plaintiff established care with Dr. Tingying Chi and reported ongoing struggles with low mood, crying spells, and anxiety. Dr. Chi diagnosed Plaintiff with major depressive disorder, recurrent episode, moderate, generalized anxiety disorder, and antisocial personality disorder. During treatment on September 23, 2019, Plaintiff reported doing well except for diabetes complications and problems with his appetite and unintentional weight loss. Plaintiff also reported enjoying spending time with his girlfriend. Dr. Chi opined that Plaintiff's uncontrolled diabetes caused many of his current depressive symptoms including fatigue and poor sleep, appetite and energy; Dr. Chi noted that he would not change Plaintiff's medication regimen until his diabetes was under control. On October 21, 2019, Dr. Chi treated Plaintiff's major depressive disorder and generalized anxiety. Plaintiff reported doing fine overall, recently

prescribed a new diabetic medication, but he had not picked up the prescription yet, and the relationship with his girlfriend was going well. Dr. Chi found Plaintiff's mental state and diabetes better controlled.

On December 9, 2019, Dr. Chi encouraged Plaintiff not to skip meals and explained the importance of following his medication regimen. Notwithstanding Plaintiff's reports of poor sleep and poorly controlled diabetes, Dr. Chi found that he was psychiatrically stable. This conclusion continued through 2020 with some adjustment of medications. In the summer of 2020, Dr. Chi highly recommended therapy/counseling multiple times during treatment, but Plaintiff declined to participate in therapy due to fear of revealing his criminal history. Dr. Chi found that Plaintiff had been "mostly psychiatrically stable over the last year" (Tr. 988).

### B. Other Medical Care

On August 14, 2019, Plaintiff reported right knee pain and requested a medication refill and adjustment. Dr. Amarilys Fernandez-Maldonado treated Plaintiff's right knee pain by adjusting his medication regimen, ordering radiographs, considering future steroid injections, and ordering a cane. Starting on October 18, 2019, Dr. Fernandez-Maldonado also treated Plaintiff's uncontrolled diabetes (Tr. 362-846). Dr. Fernandez-Maldonado listed Plaintiff's goals as not skipping any meals and medication management and encouraged Plaintiff to stop smoking. Dr. Fernandez-Maldonado treated him on January 29, 2020 with similar goals and again on August 4, 2020. At that time, Dr. Fernandez-Maldonado adjusted Plaintiff's medication regimen and increased his diabetes medication dosage a month later. As to his knee pain, during follow-up treatment on December 4, 2020, Dr. Fernandez-Maldonado observed Plaintiff sitting comfortably in a chair and having a steady gait using a cane. While he reported bilateral lower extremity neuropathy, bilateral knee pain, and shortness of breath with exertion and using an inhaler three

times a day, he refused physical therapy to alleviate his pain. Beginning in 2019, Plaintiff also received treatment for REM sleep behavior disorder and sleep walking for which he was prescribed medication. However, by June 3, 2020, he no longer was interested in proceeding with treatment. Plaintiff received other treatment from other medical providers for his mental health and diabetes that is not recounted in detail here.

### C.      Function Report - Adult

In a Function Report – Adult, Plaintiff reported that he does not have any problems getting along with family, friends, neighbors, or others because he does not have any friends he can trust and self-isolating (Tr. 277-87).

### D.      Medical Opinions

#### 1.      Dr. Amarilys Fernandez-Maldonado

On January 5, 2021, Dr. Fernandez-Maldonado completed a Physical Medical Source Statement and found that Plaintiff can sit, stand, or walk for less than one hour in an eight-hour workday (Tr. 1229 – 1232). Dr. Fernandez-Maldonado also found that Plaintiff would be absent twice a month and late three times a month or more and would need to take more than three breaks during the workday.

#### 2.      Dr. Tingying Chi

On February 3, 2020, Dr. Chi completed a Mental Medical Source Statement wherein he opined that Plaintiff was moderately limited in his ability to maintain emotional stability and needed to avoid excessive argumentativeness (Tr. 1353-56). Dr. Chi also opined that Plaintiff could perform in a task-oriented setting where contact with coworkers in only causal and infrequent and could interact normally with the general public.

**E.     The Hearing Before the ALJ**

Plaintiff testified that he is forty-seven years old and lives alone in an apartment (Tr. 55, 78). He has an eighth grade education and last worked in a warehouse filling orders in 2006 (Tr. 65, 78). When working, he was able to get along with his coworkers and supervisors (Tr. 71). Plaintiff explained that knee problems and diabetes preclude him from working (Tr. 57). He uses a cane due to knee and neuropathy issues, could only lift five pounds, sit for ten to fifteen minutes, walk for fifteen minutes, and stand for ten to fifteen minutes (Tr. 66-7). He has a driver's license, but he does not drive (Tr. 63). And, while he testified that he does not have any friends, he does have a female friend who lives across the hallway from him (Tr. 70).

**B.     The VE's Testimony**

The VE identified Plaintiff's past work as an order picker or warehouse worker, which are unskilled and light exertional job (Tr. 73).

The ALJ asked the VE a series of hypothetical questions to determine whether someone of Plaintiff's age, and with his education, work experience, and specific functional limitations would be able to perform any of Plaintiff's past work. First, the ALJ asked the VE to assume a hypothetical individual with the capacity to occasionally lift twenty pounds and frequently lift ten pounds; to stand and/or walk five out of eight hours with normal breaks; sit at least six out of eight hours with normal breaks; frequently climb ramps and stairs and balance; occasionally climb ladders, ropes, and scaffolds; and kneel, crouch, and crawl. In addition, the ALJ asked the VE to assume that the person should avoid concentrated exposure to noxious fumes, odors, dust, and gases; be limited to simple and/or repetitive work that does not require close interaction with the public; and tolerate occasional, brief, superficial contact with the public (Tr. 74). The VE responded that such a hypothetical person would not be able to perform any of Plaintiff's past

work because of the standing and other related limitations but the individual could perform light, unskilled work such an assembler and product inspector. The VE explained such jobs would be in a significantly reduced range of light work due to the individual being able to stand and/or walk five hours instead of six hours (Tr. 75).

Next, the ALJ asked the VE if the person's ability to perform sedentary jobs would change if the hypothetical were changed to reduce the exertional level to sedentary with the capacity to lift no more than ten pounds and stand and/or walk two out of eight hours. The VE indicated such restrictions would not affect the person's ability to perform sedentary jobs (Tr. 76).

Plaintiff's counsel asked the VE to consider an individual who was limited to simple, routine, repetitive tasks and who required unscheduled disruptions lasting five minutes, occurring four times per workday, in addition to regularly scheduled breaks. Next, counsel asked the VE whether an individual who was limited to simple, routine, repetitive tasks and needed to miss three, unscheduled days off work each month could perform work. The VE indicated that such an individual could not perform any jobs because such absences would result in dismissal due to worker unreliability (Tr. 77-78).

### III. The ALJ's Decision

In a decision dated March 29, 2021, the ALJ determined that Plaintiff was not disabled under the Social Security Act (Tr. 28-38).

The ALJ found that Plaintiff had severe impairments of depression, anxiety disorder, antisocial personality disorder, right knee degenerative joint disease, diabetes with neuropathy, and chronic obstructive pulmonary disease. However, the ALJ found that Plaintiff's statements about "the intensity, persistence and functionally limiting effects of pain and other symptoms are not substantiated by objective medical evidence." The ALJ identified that Plaintiff's past relevant

work as an order picker or warehouse worker but found, based on the VE's testimony, that Plaintiff could not perform his past relevant work.  The ALJ went on to find that Plaintiff could perform unskilled work with specified limitations.   Specifically, the ALJ determined that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following modifications:  (1) he is limited to simple, repetitive work with no close interaction with the public; (2) he can walk five of eight hours and sit six of eight hours per workday; (3) he can frequently climb ramps and stairs, balance, and stoop; (4) he can occasionally kneel, crouch, or crawl and climb ladders, ropes, and scaffolds; (5) he can tolerate only occasional brief, superficial contact with the public; (6) he should avoid concentrated exposure to noxious fumes, odors, dusts, and gases; and (7) he requires the use of an assistive device while walking but not standing.

## VI.     Standard of Review and Legal Framework

"To be eligible for … benefits, [Plaintiff] must prove that he is disabled …."  Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do her previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether: (1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) whether he could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.

     3.     The medical evidence from treating and consulting physicians.

     4.     The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

     5.     Any corroboration by third parties of the claimant's impairments.

     6.     The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VII.  Discussion

In his brief, Plaintiff argues that: 1. The ALJ failed to properly evaluate the severity of his limitations in social functioning; 2. The ALJ failed to properly evaluate the impact of Plaintiff's impairments on his ability to maintain regular workplace attendance.

Plaintiff first argues that the ALJ erred in finding he had only a moderate impairment in his ability to interact with others. In support of this contention, Plaintiff cites his function report where he reported that he self isolates, does not spend time with others, and does not have friends that he can trust (Tr. 282). A claimant's RFC is the most he can do despite his physical or mental impairments. Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's

responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.  20 C.F.R. §§ 404.1546, 416.945, 416.946.  In determining Plaintiff's RFC, the ALJ may consider the medical opinion evidence.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis, and prognosis; what [he] can still do despite [his] impairments; and [his] physical and mental restrictions."  20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1) (2017).  While some medical evidence must support the ALJ's RFC finding, there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.  Myers v. Colvin, 721 F.3d, 521, 526-27 (8th Cir. 2013).  "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."

In finding Plaintiff had moderate limitations in interacting with others, the ALJ addressed Plaintiff's assertion that he self-isolated.  First, the ALJ noted that Plaintiff had a girlfriend and spent time with his mother and sister.  Indeed, Plaintiff reported spending time with his girlfriend during treatment from January 3, 2019 through June 15, 2020.  Next, the ALJ considered that, during treatment, Plaintiff was cooperative and pleasant did not report having difficulty getting along with others and did grocery shopping.  The ALJ opined that Plaintiff had never been fired or laid off from a job because of problems getting along with other people, and Plaintiff reported getting along with authority figures, such as bosses.  The undersigned further notes that Plaintiff reported that he likes working alongside others, and he gets "things done though partnership with others" (Tr. 356).

The ALJ also accounted for Plaintiff's social functioning in the RFC by finding that Plaintiff could have no close interaction with the public, in other words, only occasional, brief,

superficial contact with the public (Tr. 31).  Thus, there is substantial evidence supporting the ALJ's decision.

Plaintiff further argues that the ALJ erred in formulating his RFC by providing a limitation for Plaintiff's interaction with the public without also providing a limitation for interaction with supervisors and coworkers.  A claimant can have varying amounts of contact with different groups such as the public, coworkers, and supervisors. See Hiklemeyer v. Barnhart, 380 F.3d 441, 446-47 (8th Cir. 2004); Boling v. Astrue, 2012 WL 1898783, at *6 (W.D. Mo. May 23, 2012).  In this matter, the ALJ specifically addressed the functional areas where he found limitations.  See Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003).  For example, Plaintiff testified that he was able to get along with his coworkers and supervisors when working.  Accordingly, the ALJ's finding that Plaintiff was not specifically limited in interacting with these groups is supported by substantial evidence in the record.

Plaintiff nonetheless argues that other evidence detracts from this conclusion.  "The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ. "  Vance v. Berryhill, 860 F.3d 1114, 1120 (8th Cir. 2017).  Similarly, a claimant's contention that the ALJ should have weighed the evidence "differently or drawn different conclusions do[es] not warrant relief under [this] deferential standard of review."  Hensley v. Colvin,  829 F.3d 926. 934 (8th Cir. 2016).  As set forth above, substantial evidence supports the ALJ's finding; that there may be other evidence in the record that would lead to a different result is not dispositive.

Plaintiff next argues that the ALJ erred by failing to properly evaluate the impact of his impairments on his ability to maintain regular workplace attendance, resulting in absenteeism issues which would preclude employment.  The ALJ explained that he found the opinions of

Plaintiff's medical providers, Drs. Fernandez-Maldonado and Chi, that Plaintiff would have excessive absences, not persuasive.

Given that Plaintiff filed his application after July 12, 2018, new Social Security regulations regarding the evaluation of medical opinion evidence or prior administrative medical findings apply.  20 C.F.R. § 404.1520c.  Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians.  20 C.F.R. 404.1520(a).  Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors.  20 C.F.R. § 404,1520(b)(2).  An ALJ must explain how he considered the factors of supportability and consistency in his decision but need not explain how he considered the other factors.  20 C.F.R. § 1520c(b)(2).  The supportability factor provides that "[t]he more relevant the objective evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404,1520c(c)(1).  In articulating how he considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion.  Starman v. Kijakazi, 2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520(c)(2).

On January 5, 2021, one month after she last treated Plaintiff, Dr. Fernandez-Maldonado completed a four-page form titled Physical Source Medical statement.  Dr. Fernandez-Maldonado

opined that Plaintiff would be absent twice a month, late three times a month or more, and that he would need more than three breaks during the workday

The ALJ found that Dr. Fernandez-Maldonado's opinion was inconsistent with the record as a whole and that her treatment notes do not support the extreme limitations proffered in her opinion.  The record reflects that Dr. Fernandez-Maldonado did not examine Plaintiff on the date she completed the opinion, and she did not provide a detailed explanation for the opinion, opting for a checkbox form which is unpersuasive.  See Swarthout v. Kijakazi, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form").   Further, Dr. Fernandez-Maldonado treated Plaintiff a total of five times between August 14, 2019, through December 4, 2020 and Plaintiff received only routine and conservative treatment, including outpatient visits and medication management.  "Claims of disabling symptoms may be discredited when the record reflects minimal or conservative treatment."  Brown v. Astrue, 2012 WL 8868789, *14 (E.D. Mo. Mar. 15, 2012); see also Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (affirming claimant was not disabled, in part, because claimant's treatment was routine and conservative); see, e.g., Rivers v. Saul, 2022 WL 1080937, at *13 (E.D. Mo. Apr. 11, 2022) (Treatment that does not involve more aggressive treatments than appointments with a psychiatrist, therapy, and prescription medications is routine.).  Routine or conservative treatment supports a finding that a claimant is not disabled.  The ALJ appropriately discounted Dr. Fernandez-Maldanado's opinion.

This same conclusion can be made with Dr. Chi's opinion.  On February 3, 2020, one week after he last treated Plaintiff, Dr. Chi completed a four-page Mental Medical Source Statement wherein he opined that Plaintiff was moderately limited in his ability to maintain emotional stability and needed to avoid excessive argumentativeness.  Dr. Chi also opined that

Plaintiff could perform in a task-oriented setting where contact with coworkers in only causal and infrequent and could interact normally with the general public. The ALJ found that Dr. Chi's opinion was not supported by the record as a whole. Indeed, the ALJ noted that Dr. Chi described Plaintiff as "mostly psychiatrically stable over the last year" and that record contained only one treatment note from Dr. Chi dated during the relevant period thereby calling into question how familiar Dr. Chi was with Plaintiff's functioning. Dr. Chi likewise gave an opinion in a check-box format with little detail. The ALJ reasonably found that Dr. Chi's opinion was not persuasive.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 14th day of March, 2023.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
